IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

|  |  |
|---|---|
|  | E1999-01571-COA-R3-CV |
| TOWN OF HUNTSVILLE, TENNESSEE, ) | C/A NO. 03A01-9901-CH-00024 |
| a Municipal Corporation of the ) |  |
| State of Tennessee and ) |  |
| STANLODGE, LLC, ) |  |
| ) |  |
| Plaintiffs-Appellants, ) |  |
| v. ) |  |
| ) |  |
| ) |  |
| WILLIAM I. DUNCAN, RICHARD SMITH,) |  |
| LUKE COFFEY, JAMES R. POTTER, ) |  |
| all in their official capacity ) |  |
| as members of the Scott County ) | APPEAL AS OF RIGHT FROM THE |
| Election Commission; ) | SCOTT COUNTY CHANCERY COURT |
| WILMA JEFFERS, HOWARD JEFFERS, ) |  |
| FRED K. PHILLIPS, ALMA KOGER and ) |  |
| GERALD FOSTER, all individually; ) |  |
| THE TOWN OF HELENWOOD; and ) |  |
| PAUL G. SUMMERS in his official ) |  |
| capacity as Attorney General of ) |  |
| the State of Tennessee, pursuant ) |  |
| to Tennessee Code Annotated ) |  |
| § 29-14-107, ) |  |
| ) | HONORABLE BILLY JOE WHITE, |
| Defendants-Appellees. ) | CHANCELLOR |

| For Appellants | For Appellees Wilma Jeffers, |
|---|---|
|  | et al., Individually, and |
| ANDREW R. TILLMAN | Town of Helenwood |
| Paine, Tarwater, Bickers |  |
|  & Tillman | DAVID E. RODGERS |
| Knoxville, Tennessee | Kramer, Rayson, Leake, |
|  | Rodgers    & Morgan |
|  | Oak Ridge, Tennessee |
|  |  |
|  | For Appellees Scott County |
|  | Election Commission and |
|  | Attorney General & Reporter |

PAUL G. SUMMERS
Attorney General and Reporter
Nashville, Tennessee

MICHAEL E. MOORE
Solicitor General
Nashville, Tennessee

STEVEN A. HART
Special Counsel
Nashville, Tennessee

ANN LOUISE VIX
Senior Counsel
Nashville, Tennessee

# O P I N I O N

REVERSED AND REMANDED                                    Susano, J.

This litigation originated when the Town of Huntsville ("Huntsville") and Stanlodge, LLC ("Stanlodge"), filed suit challenging the constitutionality of Chapter 1101 of the Public Acts of 1998. The plaintiffs specifically contest Section 9(f)(3)[1] of Chapter 1101, which permits certain territories to hold incorporation elections even though these territories do not satisfy the minimum requirements for such elections as set forth in the general law. *See* T.C.A. § 6-1-201 (1998). On cross motions for summary judgment, the trial court granted summary judgment to the defendants, finding that Section 9(f)(3) is constitutional. Huntsville and Stanlodge appeal, raising five issues:

> 1. Does Section 9(f)(3) violate Article XI, Section 9 of the Tennessee Constitution by granting Helenwood and four other communities a special right to

incorporate?

2. Does Section 9(f)(3) violate Article XI, Section 8 of the Tennessee Constitution by (a) creating a class of territories that can incorporate despite the general population and distance requirements applicable to municipalities statewide, (b) without any rational basis for the classification?

3. Does Section 9(f)(3) violate the separation of powers doctrine by attempting to nullify *Tennessee Municipal League v. Thompson* through a clause giving retroactive effect to a second incorporation election?

4. Does the subject of incorporation of tiny towns go beyond the restrictive caption of Chapter 1101?

5. Did the trial court err in holding as a matter of law that the legislature is not constrained by the Public Meetings Act?

I.

In 1997, the General Assembly passed Chapter 98 of the Public Acts of that year, which Chapter amended the provisions of T.C.A. § 6-1-201, *et seq.* Specifically, Section 7 of Chapter 98 lowered the minimum population requirement for incorporation from 1,500 residents to 225 residents. Section 8 of Chapter 98 deleted § 6-1-201(b)(1), a statute prohibiting the incorporation of a territory within three miles of any existing municipality or within five miles of an existing municipality with a population of 100,000 or more. Pursuant

to the then newly-enacted Chapter 98, the community of Helenwood, an area of less than 1,500 residents that adjoins the incorporated municipality of Huntsville, held an incorporation election. On November 20, 1997, a majority of those exercising their franchise voted to incorporate the Town of Helenwood. The Scott County Election Commission later certified the election. The city limits of the new town encompassed a portion of two areas adjoining the old city limits of Huntsville. In fact, those two areas, which included the site of a Holiday Inn Hotel owned by the plaintiff Stanlodge, had been the subject of an annexation ordinance enacted by Huntsville two months prior to the Helenwood incorporation election.

In December, 1997, the Supreme Court, in the case of *Tennessee Municipal League v. Thompson,* 958 S.W.2d 333 (Tenn. 1997), declared that Chapter 98 was unconstitutional, in that it violated Article II, § 17, the so-called caption provision of the Tennessee Constitution. The effect of the ruling was to reinstate the provisions of T.C.A. § 6-1-201 as they existed prior to the enactment of Chapter 98. Subsequently, in May, 1998, the General Assembly passed Chapter 1101 of the Public Acts of 1998, an act amending various statutes relating to the growth of municipalities. Section 9(f)(3) of Chapter 1101 provides as follows:

     (A)  Notwithstanding any other provision

of law to the contrary, if any territory with not less than two hundred twenty-five (225) residents acted pursuant to Chapter 98 of the Public Acts of 1997 or Chapter 666 of the Public Acts of 1996 from January 1, 1996, through November 25, 1997, and held an incorporation election, and a majority of the persons voting supported the incorporation, and results of such election were certified, then such territory upon filing a petition as provided in § 6-1-202, may conduct another incorporation election.

(B) If such territory votes to incorporate, the new municipality shall have priority over any prior or pending annexation ordinance of an existing municipality which encroaches upon any territory of the new municipality. Such new municipality shall comply with the requirements of Section 13(c) of this act.

Pursuant to section 9(f)(3), the community of Helenwood held a second incorporation election. On August 6, 1998, a majority of Helenwood residents voted again in favor of incorporation. The Scott County Election Commission later certified the results of that election. Subsequently, Huntsville and Stanlodge brought suit against the Town of Helenwood ("Helenwood"), members of the Scott County Election Commission, the individuals who signed the petition to incorporate Helenwood, and the State Attorney General seeking to invalidate the incorporation, a portion of which purports to take in areas that Huntsville claims were previously

annexed into its boundaries.  The trial court found in favor of the defendants, and dismissed the plaintiffs' complaint by way of summary judgment.  This appeal followed.

## II.

We review the propriety of the trial court's grant of summary judgment under the standard set forth in Rule 56.04, Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.*  All of the material facts necessary to our determination are undisputed.  Since our review involves only a question of law, no presumption of correctness attaches to the trial court's findings.  *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44 (Tenn.App. 1993).

## III.

We begin with the presumption that Section 9(f)(3)

of Chapter 1101 is constitutional. "There is a strong presumption in favor of the constitutionality of acts passed by the Legislature and its acts will not be held unconstitutional merely for reasons of policy." *Bozeman v. Barker,* 571 S.W.2d 279, 282 (Tenn. 1978)(citing *Dennis v. Sears, Roebuck & Co.,* 446 S.W.2d 260, 263 (Tenn. 1969).

The plaintiffs allege that section 9(f)(3) suspends a general law in violation of Article XI, Section 8 of the Tennessee Constitution. Specifically, as pertinent here, the plaintiffs charge that section 9(f)(3) contravenes T.C.A. §§ 6-1-201(a)(1) and (b)(1)(A), which provide that territories seeking to incorporate must have at least 1,500 residents and be at least three miles from an existing municipality.[2] The defendants contend that section 9(f)(3) does not contravene a general law and, in any event, is supported by a rational basis.

Article XI, Section 8 of the Tennessee Constitution provides as follows:

> The legislature shall have no power to
> suspend any general law for the benefit of
> any particular individual, nor to pass any
> law for the benefit of individuals
> inconsistent with the general laws of the
> land; nor to pass any law granting to any

individual or individuals, rights, privileges, immunitie [immunities], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

Tennessee courts have long recognized the similarity between Article XI, Section 8, and the Equal Protection Clause of the Federal Constitution, and have therefore applied an equal protection analysis to constitutional challenges brought pursuant to Article XI, Section 8. *Motlow v. State,* 145 S.W. 177, 180 (Tenn. 1912); *King-Bradwall Partnership v. Johnson Controls, Inc.,* 865 S.W.2d 18, 21 (Tenn.App. 1993)("the Supreme Court of Tennessee 'has adopted a virtually identical equal protection standard or analysis under Article XI, Section 8 of the Tennessee Constitution.'"). The plaintiffs do not argue, nor could they, that infringement of a

fundamental right is involved here, or that the legislature has created a classification involving a "suspect" or "protected" class, such as race or national origin. Therefore, the standard to be applied is the familiar "rational basis" standard. *State v. Tester,* 879 S.W.2d 823, 828 (Tenn. 1994); *City of Memphis v. International Bhd. of Elec. Workers Union Local 1288,* 545 S.W.2d 98, 102 (Tenn. 1976); *King-Bradwall,* 865 S.W.2d at 21.

IV.

Article XI, Section 8 is implicated in this case because section 9(f)(3) contravenes the general law pertaining to the incorporation of municipalities. *See Riggs v. Burson,* 941 S.W.2d 44, 53 (Tenn. 1997), *cert. denied,* 118 S.Ct. 444 (1997)("Article XI, section 8 is implicated when a statute 'contravene[s] some general law which has mandatory statewide application.'")(quoting *Civil Serv. Merit Bd. v. Burson,* 816 S.W.2d 725, 727 (Tenn. 1991)). Section 9(f)(3)(A) enables certain territories to hold elections even though they do not have at least 1,500 residents and are within three miles of an existing municipality. Furthermore, Section 9(f)(3)(B) gives these territories retroactive priority over any *prior or pending* annexation ordinances of adjoining municipalities, a priority not afforded to other territories seeking incorporation. Thus, Section 9(f)(3) creates a special classification of territories that may hold incorporation

elections while other territories of similar size and location cannot do so under the applicable general law.

Having determined that Section 9(f)(3) creates a classification in contravention of a general law, we now must determine if there is a rational basis for this classification. A statute does not violate Article XI, Section 8 unless the statute creates a classification which is capricious, unreasonable, or arbitrary. *Civil Serv. Merit Bd.,* 816 S.W.2d at 730. To withstand scrutiny under the rational basis standard, a classification must "have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others, should be so preferred or discriminated against." *State v. Nashville, Chattanooga & St. Louis Ry. Co.,* 135 S.W. 773, 775 (Tenn. 1911); *see also Knoxville's Community Dev. Corp. v. Knox County,* 665 S.W.2d 704, 705 (Tenn. 1984)("Where the provisions of an act which is either local or local in effect do contravene such a general law, however, the provisions of Article XI, § 8, of the state constitution come into play, and there must be some reasonable basis for the special provision."). The reasonableness of a classification depends upon the particular facts of the case. *Estrin v. Moss,* 430 S.W.2d 345, 349 (Tenn. 1968).

The defendants state in their brief that Section 9(f)(3) "allows individuals in certain territories who bore the expense and the effort of holding an incorporation election under certain laws subsequently found to be unconstitutional to vote again." This obviously was the motivation behind the enactment of Section 9(f)(3). The language of that legislative provision applies precisely to the circumstances of the Helenwood community. The record suggests that the same language may apply to one or more other small communities -- but not more than a handful -- who moved quickly to incorporate under the invalid 1997 legislation. When we search for the required "rational basis," we are unable to discern a rational difference between the community of Helenwood on the one hand and the hundreds of other small communities in Tennessee who are prohibited from seeking incorporation because their communities lack 1,500 or more citizens and/or are too close to an existing incorporated municipality. The record does not reflect any intrinsic difference between the community of Helenwood and these other

small communities.  For this reason, we find and hold that Section 9(f)(3) does not pass constitutional muster.  Equals must be treated the same.  Our Constitution requires it.

We simply do not find a *rational* basis for the exemption embodied in section 9(f)(3).  The sole basis for distinguishing Helenwood from other similarly-sized territories  is that Helenwood took certain actions pursuant to an *invalid* legislative enactment.  The mere fact that residents of Helenwood expended money and effort to incorporate cannot justify exemption from a general law requiring more than six times the number of residents to qualify for an incorporation election.  Nor can a void election justify the grant of retroactive priority to Helenwood over the annexation ordinance of Huntsville.

By enacting Chapter 98 in 1997, the Legislature significantly lowered the population requirement and eliminated the distance requirement for incorporation. Shortly after the Tennessee Supreme Court's decision in ***Tennessee Municipal League v. Thompson***, the Legislature enacted Section 9(f)(3) of Chapter 1101, which permits territories that had held successful incorporation elections under Chapter 98 to hold another election.  For whatever reason, the Legislature did not see fit when drafting Chapter 1101 to amend § 6-1-201 to permit *all* communities with 225 or more residents, regardless of location, to incorporate, as was

the case under the earlier-enacted, but later-declared-invalid Chapter 98. Instead, the Legislature created a special classification of territories, and the only basis for distinguishing these territories is that they had held incorporation elections under a unconstitutional statute. We find that by creating this exception to the general law, the Legislature made an arbitrary classification. We can find no rational basis to justify it.

VI.

We therefore find that section 9(f)(3) of Chapter 1101 of the Public Acts of 1998 is unconstitutional because it offends Article XI, Section 8 of the Tennessee Constitution. For this reason, we do not reach the other issues raised by the appellants. The decision of the trial court is hereby reversed. The plaintiffs are hereby granted summary judgment on their motion. All costs on appeal, as well as those at the trial level, are taxed against the appellees. This case is remanded for such further proceedings as may be required, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.

_____
Herschel P. Franks, J.